John C. Schumacher (Bar No. 6-2635)
SCHUMACHER LAW FIRM, P.C.
222 N. Broadway Avenue, Suite B
Riverton, WY 82501
(307) 857-0300
john.schumacher@windriverlaw.com
Attorneys for Plaintiff SVM

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SVM, by and through her guardian and next friend, Rachel Beaugureau, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil No. 0:21-cv-174 |
| FREMONT COUNTY SCHOOL DISTRICT NO. 14, OWEN ST. CLAIR, former Superintendent, in his individual capacity, DOE GARAGE BUS SUPERVISOR, in their individual capacity, DOE BUS DRIVER, in their individual capacity, DOE TEACHER, in their individual capacity, | ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

COMPLAINT AND JURY DEMAND

Plaintiff SVM, a minor, by and through her guardian and next friend, Rachel Beaugureau,

through attorney John C. Schumacher of Schumacher Law Firm, P.C, file the following

complaint against Defendants as captioned above:

JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this cause of action pursuant to

28 U.S.C. §§ 1331 and 1343, which gives United States District Courts jurisdiction over all civil

actions arising under the Constitution, laws, and treaties of the United States, specifically claims

made under the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX"), and the

Fourteenth Amendment to the United States Constitution made actionable pursuant to

42 U.S.C. §§1983 and 1988.

  2.  This Court has jurisdiction pursuant to 42 U.S.C. § 1988, 20 U.S.C. § 1681 *et seq*.

and 42 U.S.C. § 2000d *et seq.*, to award attorney's fees and other costs of representation to the

Plaintiff SVM.

  3.  Venue is proper in this District pursuant to 28 U.S.C. § 139l(b)(2), since the

events and omissions giving rise to the claim occurred in this District.

THE PARTIES

  4.  Plaintiff SVM is a 9-year-old minor female who is a Wyoming resident.

  5.  Plaintiff SVM's next friend in this suit is SVM's mother, Rachel Beaugureau,

who is a Wyoming resident.

  6.  At all material times of the allegations that are the basis of this lawsuit, Plaintiff

SVM and her next friend, Rachel Beaugureau, were residents of Fremont County, State of

Wyoming.

  7.  At the time of the events complained of herein, SVM was a student attending

Wyoming Indian Elementary School ("Wyoming Indian"), which is part of Defendant Fremont

County School District No. 14 ("FCSD No. 14")

  8.  FCSD No. 14 is a school district and board organized under the laws of the State

of Wyoming and provides educational opportunities to students in Fremont County, Wyoming.

  9.  FCSD No. 14 is an educational institution within the meaning of

20 U.S.C. § 1681, and a recipient of federal funds.

10.     At all material times, FCSD No. 14 employed Defendant Owen St. Clair, as Superintendent of FCSD No. 14.  During all material times, the Superintendent was an agent and/or employee of FCSD No. 14, acting or failing to act within the scope, course, and authority of his employment and his employer.

11.     At all material times, FCSD No. 14 employed Doe Bus Garage Supervisor for FCSD No. 14.  During all material times, Doe Bus Garage Supervisor was an agent and/or employee of FCSD No. 14, acting or failing to act within the scope, course, and authority of Bus Garage Supervisor's employment and Garage Supervisor's employer.

12.     At all material times, FCSD No. 14 employed Doe Bus Driver as a bus driver for FCSD No. 14.  Doe Bus Driver was the bus driver or bus drivers on the route SVM road to or from school.  During all material times, Doe Bus Driver was an agent and/or employee of FCSD No. 14, acting or failing to act within the scope, course, and authority of Bus Driver' or employment and Bus Driver's employer.

13.     At all material times, FCSD No. 14 employed Defendant Doe Teacher as a teacher for FCSD No. 14.  Defendant Doe Teacher was the teacher or teachers of SVM from the Spring of 2018 to September 2018.  During all material times, Defendant Doe Teacher was an agent and/or employee of FCSD No. 14, acting or failing to act within the scope, course, and authority of Teacher's employment and Teacher's employer.

## COMMON ALLEGATIONS

14.     Plaintiff incorporates all preceding paragraphs into the Common Allegations by reference as though fully alleged herein.

15.     Abuser was a 17-year-old student in FCSD No. 14 and Wyoming Indian High School who has developmental disabilities, including but not limited to, autism and depression. Abuser was prosecuted and sentenced as a juvenile under federal law for the assault on SVM.

16.     At all material times, FCSD No. 14 received federal funding, as contemplated by Title IX, 20 U.S.C. § 1681 *et seq.*

17.     FCSD No. 14 is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs, which includes Title IX promulgated regulations.

18.     FCSD No. 14 and Owen St. Clair maintained a custom or policy of failing to develop administrative policies or afford training, supervision or education for the detection, reporting, and investigation of alleged or suspected sexual harassment incidents, and other offensive and unconstitutional acts.

19.     FCSD No. 14, Owen St. Clair, and Doe Bus Garage Supervisor had the practice of using high school students such as Abuser to block grade school children from moving around on buses. This practice placed the Abuser, a high school student predator with developmental disabilities, in position to victimize SVM.

20.     The FCSD No. 4's policies state the school recognized that care and safety of small children was a special consideration. However, FCSD No. 4's policies only place the burden on the children on the bus to be responsible for themselves to "Help look after the safety and comfort of small children."

21.     FCSD No. 4, Owen St. Clair, and Bus Garage Supervisor failed to maintain an appropriate system of review of sexual harassment or sexual abuse claims.

22.     During all relevant time periods, SVM was required to attend school pursuant to Wyo. Stat. § 21-4-102(a).

23.     At the time of the sexual attacks that gave rise to the events complained of herein, SVM was a 7-year-old, second grade student, at Wyoming Indian and rode the school bus daily to and from school.

24.     Abuser rode the school bus daily to and from school on the route used by SVM.

25.     The Defendants, and other teachers and school staff, knew that Abuser had a history of harassment and inappropriate sexual behavior toward female students, and that he posed a substantial threat to female students.

26.     The Defendants knew that while riding the school bus, Abuser had a history of inappropriate actions including grooming young girls with games on his phone and sexually assaulting young girls.

27.     At school, Defendants Owen St. Clair, Bus Garage Supervisor, Bus Driver, and Teacher had personal knowledge of Abuser's inappropriate behavior towards girls.

28.     On information and belief, other school bus drivers had personal knowledge of Abuser's verbal and physical harassment and abuse of girls on the bus, which included SVM.

29.     SVM reported Abuser's misconduct to the Bus Driver and to Teacher.

30.     Bus Driver knew that Abuser had a history of harassment and sexual abuse of girls.

31.     Abuser constantly pursued SVM and it was well known by Bus Driver that Abuser was infatuated with SVM.

32.     Abuser would offer SVM the opportunity to play games on his phone so SVM would sit next to him on the bus.

33.     Abuser's pattern of sex-based harassment and misconduct directed at SVM was severe, pervasive, and objectively offensive, which caused SVM chronic and ever-increasing anxiety and emotional distress.

34.     The Defendants continued to transport Abuser with SVM on the school bus, despite their knowledge of Abuser's history of verbal and physical harassment, and threatening behavior.

35.     Defendants ignored many events and signals that more aggressive actions were required in response to Abuser's continued inappropriate actions toward young girls.

36.     The Defendants did not contact SVM's parents regarding the harassment of SVM by Abuser.

37.     From Spring 2018 through September 2018, Abuser engaged in grooming of SVM.  SVM was made to share a seat with Abuser, a high school male.  Abuser teased SVM and would then give SVM Abuser's cell phone to avoid SVM disclosure.  As time progressed, the Abuser reportedly began asking for favors and later demanding them in exchange for screen time on various electronics Abuser possessed.  The Abuser's requests made SVM feel bad when the Abuser began inappropriate sexual touching.  SVM told him to stop.  The Abuser promised he would not do it anymore and allowed SVM additional time on various electronics.  When the sexual abuse continued, SVM told the Bus Driver and Teacher.  SVM was told she had to keep sitting with Abuser.  The Abuser engaged in subsequent digital penetration of SVM at which time he threatened her with harm to avoid detection.

38.     The sexual assaults caused physical harm and pain to SVM.

39.     The sexual assaults caused SVM severe emotional distress, trauma, embarrassment, and constant anxiety that Abuser would harm her.

40.     On information and belief, school teachers and staff, including the Defendants, were aware of Abuser's harassment of SVM either through personal observations, or at the very least, from other staff and students.  However, SVM's parents were never informed, law enforcement authorities were not contacted, nor did the school officials investigate the matter.

41.     Defendants failed to take any action after the sexual assaults to help SVM, or to prevent Abuser from harming SVM or other students.

42.     Even though the Defendants were aware of the sexual assaults on SVM by Abuser, they continued to allow Abuser to ride the school bus with SVM without implementing any precautionary or safety measures to protect SVM or other girls.

43.     Following the sexual assaults, SVM lived in a state of constant fear, mental anguish, and embarrassment

44.     SVM's interest in school continually dropped off, and she feared riding the school bus and attending classes.

45.     SVM's parents were not provided any information from the school about the sexual assaults or Abuser's harassment of SVM, and to this date have never been provided any information by Defendants.

46.     When contacted by SVM's grandfather after the September 2018 incident, Bus Garage Supervisor told SVM's grandfather that they looked at the video tape and that it did not show the assault.  However, the video was used by law enforcement during prosecution of Abuser.

47.     After the sexual assaults, SVM displayed heightened sexual behavior uncharacteristic of a child of SVM's age as a result of the sexual assaults by Abuser

48.     SVM continues to suffer severe mental anguish and physical harm as a result of Defendants' inactions, and affirmative actions, that perpetuated Abuser's sexual harassment, ultimately emboldening Abuser to sexually assault SVM.

## COUNT I

### VIOLATION OF THE EDUCATIONAL AMENDMENTS OF 1972 (TITLE IX), 20 U.S.C. §1981, ET SEQ. AGAINST DEFENDANT FCSD NO. 14

49.     Plaintiff SVM incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

50.     At all material times, Defendant FCSD No. 14 was a recipient of federal funds and therefore, subject to the duties, responsibilities, and provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

51.     At all material times, Owen St. Clair, as Superintendent, and Scott Morrow, as the principal of Wyoming Indian, were district officials who had knowledge of Abuser's sexual harassment, who had the authority to address Abuser's pattern of inappropriate sexual conduct, and who had authority to implement corrective measures on behalf of SVM.

52.     At all material times, Bus Garage Supervisor was a district official who had knowledge of Abuser's sexual harassment, who had the authority to address Abuser's pattern of inappropriate sexual conduct, and who had the authority to implement corrective measures on behalf of SVM.

53.     Doe Bus Driver was a bus driver who had knowledge of Abuser's sexual harassment, and was a district official who had the authority to address Abuser's pattern of inappropriate sexual conduct and to implement corrective measures on behalf of SVM.

54.     At all material times, Doe Teacher, as SVM's teacher, was a district official who had knowledge of Abuser's sexual harassment and the authority to address Abuser's pattern of inappropriate sexual conduct, and to implement corrective measures on behalf of SVM.

55.     In addition to the Defendants, other teachers and staff at Wyoming Indian Elementary School or Wyoming Indian High School had actual knowledge, or at the very least, had obtained sufficient knowledge, of Abuser's inappropriate conduct of offensively touching girls.  They were aware that he posed a significant threat to female students prior to the sexual assaults of SVM.

56.     As a direct and proximate result of the Defendants' deliberate indifference to Abuser's sexually aggressive behavior and the sexual assaults upon SVM, as well as violations of her Fourteenth Amendment rights, SVM has suffered and continues to suffer psychological damage, emotional distress, and her future relationships, education, and earning potential have been negatively affected.

57.     SVM has experienced depression, sadness, irritability, temper outbursts, escalation of aggressive verbalizations and behaviors, and attention problems.  SVM has had attempts to avoid school.  SVM experiences social problems, including difficulties within pre-established peer relationships, rule-breaking, lying, inappropriate self-stimulation, and sleep difficulties, including flashback-type symptoms, nightmares, and other intrusive thoughts.

58.     SVM has developed Posttraumatic Stress Disorder and Disruptive Mood Dysregulation Disorder due to the anxiety and severe emotional distress that she has experienced as a result of the harassment and sexual assaults by Abuser and its devastating after effects which presently continue.  As a result, SVM has undergone counseling.

59.     FCSD No. 14 and its officials had actual knowledge of the sexual harassment of female students, including the harassment of SVM, by Abuser, and failed to properly supervise and/or prevent his continual sexual harassment conduct.

60.     As a result of the sexual harassment and sexual abuse by Abuser, SVM had to withdraw from school to be home schooled for a period of time and now must be driven to school daily by mother.

61.     The FCSD No. 14's failure to promptly and appropriately respond to the alleged sexual harassment resulted in SVM being excluded from participation in, being denied the benefits of, and being subjected to sexual harassment and sexual assault in the District's education program in violation of Title IX.

62.     FCSD No. 14 failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference toward SVM.

63.     FCSD No. 14 engaged in a pattern and practice of behavior that demonstrated the District's deliberate indifference to Abuser's sexually aggressive behavior.

64.     The sex-based harassment alleged in the Common Allegations and Count I was so severe, pervasive, and objectively offensive that it deprived SVM of access to educational opportunities and benefits provided by the school.

65.     FCSD No. 14 has and/or had unconstitutional customs or policies of:

a.      Failing to investigate evidence of criminal and tortious misconduct against FCSD No. 14 students in the nature of violations of their right to personal security and bodily integrity; and

b.      Failing to adequately train and supervise FCSD No. 14 employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

66.      On information and belief, the FCSD No. 14 has followed these unconstitutional customs and policies not only with regard to SVM, but also with regard to criminal and tortious misconduct committed against other FCSD No. 14 students that Abuser has harassed and assaulted.

67.      FCSD's actions and inactions materially impaired SVM's access to educational opportunities and benefits from FCSD No. 14 in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), by:

a.      Failing to properly train its staff and employees regarding sexual harassment and ensure that they understood their duties and responsibilities to report such behavior.

b.      Failing to investigate or take actions required by Title IX to remedy the hostile school environment and harassment prior to the sexual assault, even though the Defendant had actual knowledge of the underlying facts concerning Abuser's history of frequent, blatant, aggressive verbal and physical sexual harassment of students, including SVM.

c.      Failing to notify SVM's parents regarding the harassment of SVM.

d.      Failing to notify SVM's parents regarding the sexual assaults of SVM.

e.      Failing to notify law enforcement of the sexual assault.

f.      Allowing Abuser to continue to ride the bus with SVM after the sexual assault.

68.     As a direct and natural consequence of FCSD No. 14 's actions, inactions, and deliberate indifference, Plaintiff SVM sustained and continues to suffer injuries for which she is entitled to be compensated, including without limitation:

a.     Past, present, and future physical illness, psychological pain and trauma, mental anguish, emotional distress, and loss of enjoyment of life.

b.     Medical bills, psychological/therapist bills, and other costs and expenses incurred in past, present, and future treatment.

c.     Impaired educational capacity,

d.     Impaired earning capacity,

e.     Attorney fees and costs

f.     Injunctive relief requiring Defendant FCSD No. 4 to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including eliminating any hostile environment that may arise from or contribute to it and to properly train school employees

g.     Such other relief as the Court deems fair and just

## COUNT II

**VIOLATION OF PLAINTIFF SVM'S RIGHT OF SUBSTANTIVE DUE PROCESS
PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES
CONSTITUTION BROUGHT UNDER 42 U.S.C. § 1983 - DANGER CREATION
AGAINST DEFENDANT OWEN ST. CLAIR, SUPERINTENDENT
IN HIS INDIVIDUAL CAPACITY**

69.     Plaintiff SVM incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

70.     Under the Fourteenth Amendment, SVM had the right as a public-school student to personal security, bodily integrity, and the right of substantive due process.

71.     Owen St. Clair, at all relevant times, was acting under color of state law while employed by FCSD #4 as the Superintendent.

72.     Part of Owen St. Clair's duties and responsibilities included overseeing the training and supervision of the bus garage supervisor, bus drivers and teachers.

73.     Owen St. Clair failed to ensure that bus drivers were properly trained and supervised to identify and report suspected sexual harassment or assault.

74.     Owen St. Clair failed to ensure that teachers were properly trained and supervised to identify and report suspected sexual harassment or assault.

75.     Owen St. Clair affirmatively acted by allowing Abuser to continue his sexual harassment of female students, especially SVM, by permitting Abuser and SVM to ride the same bus together without implementing any precautionary measures to restrain Abuser.

76.     Owen St. Clair's actions created and increased SVM's vulnerability and danger by allowing Abuser, a student with known aggressive sexual harassment and sexual assault propensities, to have contact with SVM while riding the bus with her with no measures or steps in place to protect SVM.  Owen St. Clair knew, through Owen St. Clair official capacity as the

Page 13 of 22

former Superintendent, that Abuser was Abuser sexual harasses or sexually assaulted female students, and that allowing Abuser to ride the bus with SVM placed SVM in immediate substantial danger.  Owen St. Clair never contacted SVM's parents about the harassment or the sexual abuse, nor did Owen St. Clair investigate the matters or notify law enforcement of the sexual assault.

77.     SVM was a minor female student at the time and required to attend school.

78.     Owen St. Clair acted recklessly and in conscious disregard of the risks he placed SVM into with Abuser.

79.     Given the circumstances known to Owen St. Clair and the knowledge that Owen St. Clair possessed about Abuser, Owen St. Clair's actions shock the conscience.

80.     As a direct and proximate cause of Owen St. Clair's affirmative actions and deliberate indifference, SVM sustained and continues to sustain injuries for which SVM is entitled to be compensated, including without limitation:

a.     Past, present, and future physical pain and illness, psychological pain and trauma, mental anguish, emotional distress, and loss of enjoyment of life.

b.     Medical bills, and psychological/therapist bills, and other costs and expenses incurred in past, present, and future treatment.

c.     Impaired educational capacity.

d.     Impaired earning capacity.

e.     Attorney fees and costs.

f.     Such other relief as the Court deems fair and just.

g.     Punitive damages as necessary and sufficient to deter Bus Garage Supervisor from engaging in the same or similar behavior in the future.

### COUNT III

**VIOLATION OF PLAINTIFF SVM'S RIGHT OF SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BROUGHT UNDER 42 U.S.C. § 1983 - DANGER CREATION AGAINST DEFENDANT DOE GARAGE BUS SUPERVISOR, IN HIS INDIVIDUAL CAPACITY**

81.     Plaintiff SVM incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

82.     Under the Fourteenth Amendment, SVM had the right as a public-school student to personal security, bodily integrity, and the right of substantive due process.

83.     Bus Garage Supervisor, at all relevant times, was acting under color of state law while employed by FCSD #4 as the Bus Garage Supervisor.

84.     Part of Bus Garage Supervisor's duties and responsibilities included the training and supervision of bus drivers.

85.     Defendant Bus Garage Supervisor failed to properly train and supervise the bus drivers to identify and report suspected sexual harassment or assault.

86.     Defendant Bus Garage Supervisor affirmatively acted by allowing Abuser to continue his sexual harassment of female students, especially SVM, by permitting Abuser and SVM to ride the same bus together without implementing any precautionary measures to restrain Abuser.

87.     Defendant Bus Garage Supervisor's actions created and increased SVM's vulnerability and danger by allowing Abuser, a student with known aggressive sexual harassment and sexual assault propensities, to have contact with SVM while riding the bus with her with no measures or steps in place to protect SVM.  Bus Garage Supervisor knew, through Bus Garage Supervisor's official capacity as the Bus Garage Supervisor, that Abuser was

infatuated with SVM, and that allowing Abuser to ride the bus with SVM placed SVM in immediate substantial danger. Bus Garage Supervisor never contacted SVM's parents about the harassment or the sexual abuse, nor did Bus Garage Supervisor investigate the matters or notify law enforcement of the sexual assault.

88.     SVM was a minor female student at the time and required to attend school.

89.     Defendant Bus Garage Supervisor acted recklessly and in conscious disregard of the risks he placed SVM into with Abuser.

90.     Given the circumstances known to Bus Garage Supervisor and the knowledge that Bus Garage Supervisor possessed about Abuser, Bus Garage Supervisor's actions shock the conscience.

91.     As a direct and proximate cause of Defendant Bus Garage Supervisor's affirmative actions and deliberate indifference, SVM sustained and continues to sustain injuries for which SVM is entitled to be compensated, including without limitation:

a.     Past, present, and future physical pain and illness, psychological pain and trauma, mental anguish, emotional distress, and loss of enjoyment of life.

b.     Medical bills, and psychological/therapist bills, and other costs and expenses incurred in past, present, and future treatment.

c.     Impaired educational capacity.

d.     Impaired earning capacity.

e.     Attorney fees and costs.

f.     Such other relief as the Court deems fair and just.

g.     Punitive damages as necessary and sufficient to deter Bus Garage Supervisor from engaging in the same or similar behavior in the future.

## COUNT IV

### VIOLATION OF PLAINTIFF SVM'S RIGHT TO SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BROUGHT UNDER 42 U.S.C. § 1983 - DANGER CREATION AGAINST DEFENDANT DOE BUS DRIVER IN HIS INDIVIDUAL CAPACITY

92.     Plaintiff SVM incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

93.     Doe Bus Driver was the bus driver on SVM's bus route.

94.     Bus Driver, at all relevant times was acting under color of state law while employed by FCSD No. 14 as a bus driver.

95.     Part of Bus Driver's duties and responsibilities included the oversight, supervisions and training of students who rode the bus.

96.     Bus Driver was aware of Abuser's sexual harassment and sexual abuse history. Bus Driver continued to allow Abuser and SVM to ride the same bus with no precautionary measures.

97.     Bus Driver's actions created and increased SVM's vulnerability and danger by allowing Abuser, a student with known aggressive sexual harassment and sexual assault propensities, to have contact with SVM while riding the bus with SVM with no measures or steps in place to protect SVM.

98.     Bus Driver never contacted SVM's parents about the harassment or the sexual abuse, nor did Bus Driver investigate the matters or notify law enforcement of the sexual assault.

99.     Bus Driver acted recklessly and in a conscious disregard of the substantial risks and dangers that Bus Driver's actions placed SVM into.

100.     Bus Driver's actions that increased the risks to SVM were obvious given Abuser's history.

101.     Given the circumstances and the personal knowledge of Abuser's history that Bus Driver possessed in Bus Driver's official capacity, Bus Driver's actions shock the conscience.

102.     As a direct and proximate cause of Bus Driver's affirmative actions, and deliberate indifference, Plaintiff SVM sustained and continues to sustain injuries for which she is entitled to be compensated, including without limitation:

a.     Past, present, and future physical pain and illness, psychological pain and trauma, mental anguish, emotional distress, and loss of enjoyment of life.

b.     Medical bills, and psychological/therapist bills, and other costs and expenses incurred in past, present, and future treatment.

c.     Impaired educational capacity.

d.     Impaired earning capacity.

e.     Attorney fees and costs.

f.     Such other relief as the Court deems fair and just.

g.     Punitive damages as necessary and sufficient to deter Bus Driver from engaging in the same or similar behavior in the future.

**COUNT V**

**VIOLATION OF PLAINTIFF SVM'S RIGHT OF SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BROUGHT UNDER 42 U.S.C. § 1983 - DANGER CREATION AGAINST DEFENDANT DOE TEACHER IN HER INDIVIDUAL CAPACITY**

103.    Plaintiff SVM incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

104.    Doe Teacher was SVM's teacher at the relevant times of this complaint.

105.    Teacher, at all relevant times, was acting under color of state law while employed by FCSD No. 4 as a teacher.

106.    Part of Teacher's duties and responsibilities included the supervision of students in class and on the school grounds.

107.    Teacher was aware of Abuser's sexual harassment and sexual abuse history of female students, including SVM.

108.    Despite Teacher's knowledge of Abuser's continued and frequent sexual harassment of female students, to especially include SVM, and that Abuser posed a significant risk to SVM and other students, Teacher took no action to contact SVM's parents, to report the incidents, or to take any precautionary steps to deter Abuser from harassing students.

109.    Teacher's actions created and increased SVM's vulnerability and danger by allowing Abuser, a student with known aggressive sexual harassment and sexual assault propensities, to continue Abuser's contact with SVM while riding the bus with SVM without any measures or steps in place to protect SVM.

110.    Teacher knew, through Teacher's official capacity, that Abuser, was infatuated with SVM and that allowing Abuser to ride the bus with placed SVM in substantial immediate

danger. Teacher never contacted SVM's parents about the harassment or the sexual abuse, nor did Teacher investigate the matters or notify law enforcement of the sexual assault.

111.    Teacher acted recklessly and in a conscious disregard of the substantial risks and dangers that Teacher's actions and statements placed SVM in increased risk of harm. Teacher's actions increased the risks to SVM and were obvious given Abuser's history.

112.    Given the circumstances and the personal knowledge Teacher possessed of Abuser's history in Teacher's official capacity, Teacher's actions shock the conscience.

113.    As a direct and proximate cause of Teacher's affirmative actions, and deliberate indifference, SVM sustained and continues to sustain injuries for which SVM is entitled to be compensated, including without limitation:

a.    Past, present, and future physical pain and illness, psychological pain and trauma, mental anguish, emotional distress, and loss of enjoyment of life.

b.    Medical bills, and psychological/therapist bills, and other costs and expenses incurred in past, present, and future treatment.

c.    Impaired educational capacity.

d.    Impaired earning capacity.

e.    Attorney fees and costs.

f.    Such other relief as the Court deems fair and just.

g.    Punitive damages as necessary and sufficient to deter Teacher from engaging in the same or similar behavior in the future.

WHEREFORE, Plaintiff SVM respectfully requests judgment in SVM's favor and against Defendants: Fremont County School District No. 14, Owen St. Clair, Scott Morrow, Doe Bus Garage Supervisor, Doe Bus Driver, and Doe Teacher as follows:

a.  Compensatory damages for SVM's psychological harm, physical harm and severe emotional distress.

b.  Damages for out-of-pocket expenses of SVM's family incurred in response to the circumstances.

c.  Punitive damages.

d.  Statutory interest.

e.  Costs.

f.  Reasonable attorney fees.

## JURY DEMAND

COMES NOW the Plaintiff SVM, by and through her guardian and next friend, Rachel

Beaugureau, through her counsel, John C. Schumacher of Schumacher Law Firm, P.C. and

demands a trial by jury.


DATED: September 17, 2021


SCHUMACHER LAW FIRM, P.C.

John C. Schumacher (Bar No. 6-2635)
222 N. Broadway Avenue, Suite B
Riverton, Wyoming 82501
307-857-0300
john.schumacher@windriverlaw.com